**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| JUAN MARCETTE DAVIS,<br><br>                      Plaintiff,<br><br>  v.<br><br>R. WALKER. *ET AL.*,<br><br>                      Defendants. | Case No. 3:14-cv-01297-BAS(NLS)<br><br>**ORDER:**<br><br>**(1) OVERRULING OBJECTION TO REPORT AND RECOMMENDATION (ECF NO. 46);**<br><br>**(2) APPROVING AND ADOPTING REPORT AND RECOMMENDATION (ECF NO. 41);**<br><br>**(3) GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (ECF NO. 32)** |

Plaintiff Juan Marcette Davis ("Plaintiff" or "Davis") commenced this civil rights action against Dr. G. Casian, Dr. R. Walker, and Correctional Officer ("C.O.") Flores (collectively, "Defendants") pursuant to 42 U.S.C. §1983 alleging the two prison doctors and the C.O. were deliberately indifferent to his serious medical needs, which stemmed from a painful callous on the in-step of his left foot requiring treatment. (*See* ECF No. 1 ("Compl.").) Plaintiff alleges Dr. Casian and Dr. Walker were deliberately indifferent by: (1) failing to refer him to a podiatrist; and (2) failing

to continue the order that he be assigned a bottom bunk in the lower tier of the prison. (*See id*.) As a result, on January 21, 2013, Plaintiff alleges he fell as he was climbing out of a top bunk and injured his back. (*See id.*) Davis further alleges C.O. Flores was deliberately indifferent when he failed to assign Davis a lower bunk. (*See id*.)

Defendants filed a Motion for Summary Judgment. (ECF No. 32). Plaintiff responded and Defendants replied. (*See* ECF Nos. 39, 40.) U.S. Magistrate Judge Nita L. Stormes issued a Report and Recommendation ("R&R") recommending that Defendants' Motion for Summary Judgment be denied with respect to Dr. Casian and Dr. Walker, but that it be granted with respect to C.O. Flores and that C.O. Flores be dismissed from the suit. (ECF No. 41.) Dr. Casian and Dr. Walker filed Objections to the R&R (ECF No. 46) and Plaintiff filed a Reply to these Objections (ECF No. 48). Plaintiff did not object to the R&R.

For the reasons set forth below, the Court **OVERRULES** Defendants' objections (ECF No. 46), **APPROVES** and **ADOPTS** the R&R in its entirety (ECF No. 41), and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary Judgment (ECF No. 32).

## I.   BACKGROUND

Davis had left foot surgery while incarcerated at Wasco State Prison. (Declaration of Juan Marcette Davis in Support of Opposition to Summary Judgment, ECF No. 39-2 ("Davis Decl.") at ¶ 2.) "Following that surgery, callouses began forming in the incision line from the surgery." (*Id*.) The callouses were painful. (*Id*.) "[T]he most helpful treatment . . . was having a lower bunk, orthopedic shoes, and debridement surgeries which reduced the size of [the] callous and the degree to which it protruded." (*Id*.)

In September 2011, while incarcerated at R.J. Donovan Prison ("Donovan"), Davis saw podiatrist Dr. Wagers. (Davis Decl. at ¶ 6; Declaration of R. Walker, D.O., in Support of Motion for Summary Judgment (Part I), ECF No. 32-5 ("Walker Decl. I") at Exh. B, pp. 12-13.) Dr. Wagers performed debridement surgery to reduce the

size of the callous, ordered orthopedic shoes, and recommended "lower bunk—not too [sic] change." (Davis Decl. at ¶ 6; Walker Decl. I at p. 13.) Dr. Wagers explained that, although Davis would be dealing with this condition for the rest of his life, it could be managed with regular debridement surgeries, orthopedic shoes, and certain limitations on activity. (Davis Decl. at ¶ 6; Walker Decl. I at p. 12.) After this visit, Davis received orthopedic shoes and a bottom bunk/lower tier chrono, and he reports this seemed to help the pain. (Davis Decl. at ¶ 2.)

Unfortunately, Donovan prison staff seized Davis' orthopedic shoes in a prison-wide cell raid, and Davis was unable to get them back. (*Id*. at ¶ 8.) When he started using normal shoes, the pain returned. (*Id*.) Davis saw Dr. Campbell (general practitioner) in February 2012, who referred Davis for podiatry services and recommended that he receive replacement of his orthopedic shoes. (*Id*. at ¶ 8; Walker Decl. I at pp. 19-20.) These recommendations were denied. (Davis Decl. at ¶ 8.)

In June 2012, Davis saw Dr. Campbell again. At that point, he had purchased new tennis shoes, which he reported seemed to help, but he still reported pain getting off and on the bunk. (Walker Decl. I at p. 22.) In September 2012, Davis asked to see podiatry and for a renewal of his lower bunk chrono. (*Id*. at pp. 24-25.) He reported pain in the sole of his foot. (*Id*.)

In October 2012, RNs at Donovan evaluated Davis and concluded he did not meet the criteria for a lower bunk. (*Id*. at pp. 27, 29; Declaration of G. Casian, M.D. in Support of Motion for Summary Judgment, ECF 32-4 ("Casian Decl.") at ¶¶ 3-4.) Davis appealed this decision. (Davis Decl. at ¶ 12; Walker Decl. I at Exh. A.) Davis also filled out a Health Care Services Request Form explaining that he was in pain and needed to see a podiatrist. (Davis Decl. at ¶ 13; Walker Dec. I, Exhibit A.) Both Dr. Casian and Dr. Walker reviewed these appeals. (Casian Decl. at ¶ 7; Walker Decl. I at ¶ 14.)

On November 19, 2012, Dr. Casian (general practitioner) examined Davis to evaluate Davis' appeal from the RNs' decision. (Davis Decl. at ¶ 14; Casian Decl. at

¶ 4.) Davis says he told Dr. Casian that his condition had worsened, that he was having throbbing pain impacting his ability to work and sleep, that orthopedic shoes and debridement helped his condition and that using an upper bunk caused him pain and discomfort. (Davis Decl. at ¶ 14.) Dr. Casian noted that Davis reported "intermittent foot pain with prolonged walking, standing" and denied his requests. (Walker Decl. I at p. 35.) According to Davis, Dr. Casian said "you look healthy enough to climb" and that other people needed the lower bunks. (Davis Decl. at ¶ 14.) Davis claims he appealed Dr. Casian's decision on December 12, 2012, saying he felt unsafe climbing and was worried about falling; that he was being forced to use a sink or desk to get up and down from the top bunk; and that he was in constant pain and felt vulnerable. (Davis Decl. at ¶ 16.)

On January 21, 2013, while climbing down from the top bunk, Davis fell and injured his back. (Davis Decl. at ¶ 17; Declaration of R. Walker, D.O. (Part II) in Support of Motion for Summary Judgment, ECF No. 32-6.) Dr. Walker is the Chief Physician at Donovan, and, as such, he supervises the doctors at Donovan. (Declaration of Stephen R. Frieder in Support of Opposition to Motion for Summary Judgment, ECF No. 39-3, ("Frieder Decl.") at Exh. D (Deposition of Robert Walker, M.D. (10/29/15), ("Walker Depo.")) at p. 109, lines 3-11.) He reviewed Davis' appeals and medical records. (Walker Depo. at p. 112.) He sits on the Internal Utilization Management Committee ("IUMC") at Donovan that determines whether a recommendation for referral to a specialist (*i.e.,* podiatrist) should be denied or not. (Walker Depo. at p. 118; Frieder Decl. at Exh. B §3352(a).) The IUMC also determines "institutional bed usage." (Frieder Decl. at Exh. B. §3352(a).)

Davis claims that once he left Donovan and was transferred to another prison in April 2013, he saw a podiatrist, got orthopedic shoes, was ordered a permanent bottom bunk/lower tier, and received debridement surgeries every one to three months, which has helped his condition. (Davis Decl. at ¶¶ 20-21.) Davis has also received on-going treatment for his back injury. (*Id*.)

## II. LEGAL STANDARD

The Court reviews de novo those portions of the Report to which objections are made. 28 U.S.C. § 636(b)(1). The Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." *Id.* But "[t]he statute [28 U.S.C. § 636(b)(1)(c)] makes it clear that the district judge must review the magistrate judge's findings and recommendations de novo if objection is made, but not otherwise." *United States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (en banc) (emphasis in original); *see also Schmidt v. Johnstone*, 263 F. Supp. 2d 1219, 1226 (D. Ariz. 2003) (concluding that where no objections were filed, the district court had no obligation to review the magistrate judge's report). "Neither the Constitution nor the statute requires a district judge to review, de novo, findings and recommendations that the parties themselves accept as correct." *Reyna-Tapia*, 328 F.3d at 1121. This rule of law is well-established in the Ninth Circuit and this district. *See Wang v. Masaitis*, 416 F.3d 992, 1000 n.13 (9th Cir. 2005) ("Of course, de novo review of a R & R is only required when an objection is made to the R & R."); *Nelson v. Giurbino*, 395 F. Supp. 2d 946, 949 (S.D. Cal. 2005) (Lorenz, J.) (adopting report in its entirety without review because neither party filed objections to the report despite the opportunity to do so); *see also Nichols v. Logan*, 355 F. Supp. 2d 1155, 1157 (S.D. Cal. 2004) (Benitez, J.).

Objections must be written and specific. *See, e.g.*, Fed. R. Civ. P. 72(b)(2) ("[A] party may serve and file specific written objections to the proposed findings and recommendations" of the magistrate judge.) "Numerous courts have held that a general objection to the entirety of a Magistrate Judge's [report and recommendation] has the same effect as a failure to object." *Alcantara v. McEwen*, No. 12-cv-401-IEG(DHB), 2013 WL 4517861, at *1 (S.D. Cal. August. 15, 2013) (citing cases). In the absence of specific objection, the clear weight of authority indicates that the court need only satisfy itself that there is no "clear error" on the face of the record before adopting the magistrate judge's recommendation. *See, e.g., id.*; Fed. R. Civ. P. 72(b)

Advisory Comm. Notes (1983) (citing *Campbell v. U.S. Dist. Court for N. Dist. Of Cal.*, 501 F.3d 5, 7 (9th Cir. 1974)).

## III. DISCUSSION

### A. C.O. Flores

The R&R filed by Magistrate Judge Stormes recommends that C.O. Flores be dismissed from the suit because "[b]y Davis' own admission, . . . Flores did not have subjective knowledge of a lower bunk chrono, so he could not have been deliberately indifferent to Davis' serious medical needs." (ECF No. 41 at p. 16, lines 22-24.) Davis does not object to this recommendation. Therefore, the Court adopts the R&R's recommendation to grant summary judgment with respect to Defendant Flores.

Furthermore, even reviewing the record de novo, this Court finds the Magistrate Judge's recommendation with respect to Defendant Flores is correct. There is no evidence that Flores knew of Davis' need for a lower bunk and, therefore, he could not have been deliberately indifferent to Davis' medical needs. The Court **GRANTS** the Motion for Summary Judgment with respect to Defendant Flores.

### B. Dr. Casian and Dr. Walker

Magistrate Judge Stormes recommends that Defendants' Motion for Summary Judgment be denied with respect to Dr. Casian and Dr. Walker. (ECF No. 41). Dr. Casian and Dr. Walker object to this recommendation arguing: (1) this simply involves a conflict of medical doctor opinions and, therefore, is not actionable; (2) requests for specific forms of treatment are not actionable; (3) there is no evidence Davis was ignored or left without care—in fact, he had repeated medical care from RNs; (4) there is no competent evidence to support the argument that any medical decision was made based on non-medical factors (*i.e.*, a lack of available podiatrists.); and (5) Dr. Walker only reviewed Davis' two appeals and never examined Davis, therefore he should not be held liable. (*See* ECF No. 46).

///

### 1. Summary Judgment Standard

Summary judgment is appropriate under Rule 56(c) where the moving party demonstrates the absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). A fact is material when, under the governing substantive law, it could affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Freeman v. Arpaio*, 125 F.3d 732, 735 (9th Cir. 1997). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

A party seeking summary judgment always bears the initial burden of establishing the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. The moving party can satisfy this burden in two ways: (1) by presenting evidence that negates an essential element of the nonmoving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *Id.* at 322-23. "Disputes over irrelevant or unnecessary facts will not preclude a grant of summary judgment." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987).

If the moving party meets this initial burden, the nonmoving party cannot defeat summary judgment merely by demonstrating "that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986*); Triton Energy Corp. v. Square D Co.*, 68 F.3d 1216, 1221 (9th Cir. 1995) ("The mere existence of a scintilla of evidence in support of the nonmoving party's position is not sufficient.") (citing *Anderson*, 477 U.S. at 252). Rather, the nonmoving party must "go beyond the pleadings" and by "the depositions, answers to interrogatories, and admissions on file," designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).

When making this determination, the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmoving party. *See Matsushita*. 475 U.S. at 587. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, [when] he [or she] is ruling on a motion for summary judgment." *Anderson*, 477 U.S. at 255.

### 2. Deliberate Indifference Standard

The Eighth Amendment protects prisoners from "inhumane conditions of confinement." *Morgan v. Morgensen*, 465 F.3d 1041, 1045 (9th Cir. 2006). Consequently, the government must "provide medical care for those whom it is punishing by incarceration" and cannot act with deliberate indifference to a prisoner's serious medical need. *Estelle v. Gamble*, 429 U.S. 97, 103 (1975).

Defendants do not appear to dispute that Davis was suffering from a "serious medical need" or that Davis fell and injured his back when he was climbing down from his upper bunk. Instead, they argue there is no evidence they were "deliberately indifferent" to Davis' serious medical need.

"Deliberate indifference" is more blameworthy than negligence but "something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 828, 835 (1994). It is the equivalent of "recklessly disregarding" a risk. *Id.* at 836.

A prisoner alleging "deliberate indifference" must show: (1) a purposeful act or failure to respond to a prisoner's pain or possible medical need; and (b) harm caused by the indifference. *Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006). "Indifference may appear when prison officials deny, delay or intentionally interfere with medical treatment." *Id.* "[W]hether an x-ray or additional diagnostic techniques or forms of treatment are indicated is . . . a matter for medical judgment that does not subject a prisoner to cruel and unusual punishment in violation of the Eighth Amendment." *Keller v. Faecher*, 44 F. App'x. 828, 831 (9th Cir. 2002) (internal

quotations omitted).

Prison administrators "are liable for deliberate indifference when they knowingly fail to respond to an inmate's request for help." *Jett*, 439 F.3d at 1098; *see also Quiroga v. Green*, No. 1:11-cv-00989-GBC (PC), 2012 WL 3704784, at *7-8 (E.D. Cal. Aug. 24, 2012) ("administrators may only be held liable if they 'participated in or directed the violations, or knew of the violations and failed to act to prevent them.'") (quoting *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989)).

### 3. Analysis

Viewing the evidence in its entirety in a light most favorable to Davis, the Court finds there are triable issues of fact as to whether either Dr. Casian or Dr. Walker was deliberately indifferent to Davis' medical need. A jury could find deliberate indifference from the refusal to send Davis to a podiatrist, despite podiatrist Dr. Wagers' recommendation that he receive regular debridement surgeries, Dr. Campbell's referral for podiatry services, and Davis' repeated requests to see a podiatrist. A jury could find deliberate indifference from Dr. Casian's determination that Davis only suffered "intermittent pain" from his callous and her conclusion that Davis looked healthy enough to climb up to a top bunk. A jury could find that the decision not to keep Davis in a bottom bunk was made because of space concerns (Dr. Casian told Davis "other people need lower bunks") as opposed to legitimate medical concerns.

Drs. Casian and Walker first argue that this case simply involves doctors with differing medical opinions: Drs. Wagers and Campbell recommended one type of treatment; Dr. Casian disagreed. Neither differing medical opinions, nor requests for specific forms of treatment are actionable. However, there is a genuine issue of material fact as to whether Dr. Casian's disagreement was based on her medical assessment or the needs of the prison. Furthermore, Davis is not arguing that he should have received a specific form of treatment (*i.e.*, an x-ray), but that he should have been referred to a podiatrist and not forced to climb up and out of a top bunk in

his condition. Thus, his situation is more akin to the prisoner in *Jett*, who received a recommendation that he see an orthopedist for casting, which was never done. *See Jett*, 439 F.3d at 1097-98. In this case, Davis received a recommendation that he see a podiatrist regularly, but this was never done. A jury could find this was deliberate indifference.

Drs. Casian and Walker further argue that Davis had frequent medical care from the time he saw Dr. Wagers until the time he fell. However, a review of the record shows that the majority of his visits were with RNs, not doctors. The doctor he did see, other than Dr. Casian, recommended that he be seen by a podiatrist and that he continue in his bottom bunk assignment. Therefore, a jury could find the frequent visits with RNs were insufficient.

Drs. Casian and Walker next object that there is no competent evidence that the medical decisions were made based on lack of available podiatrists (or lack of available bottom bunk space). Again, this is a jury question. There is a genuine issue of material fact as to what factored into the doctors' medical decisions.

Finally, citing *George v. Smith*, 507 F.3d 605 (7th Cir. 2007) and *Quiroga*, Dr. Walker argues that he should not be held liable because he only reviewed Davis' appeals. It is true that "[o]nly persons who caused or participated in the violations" may be found liable and "[r]uling against a prisoner or on an administrative complaint does not cause or contribute to the violation." *George*, 507 F.3d at 609. In this case, however, there is evidence that Dr. Walker did more than just review the appeals. He is the Chief Surgeon and Physician at the prison. (Walker Depo. at p. 109.) He was on the committee that reviewed all referrals for specialty care (presumable including podiatry). (Walker Depo. at p. 118; Frieder Decl. at Exh. B §3352(a).) This was also the committee that made decisions about institutional bed usage (presumable referrals for bottom bunks). (Frieder Decl. at Exh. B §3352(a).) As such, there is a genuine issue of material fact as to how much Dr. Walker knew and participated in the refusal to refer Davis to a podiatrist and refusal to grant him a bottom bunk.

1  **IV.   CONCLUSION**

2     For the foregoing reasons, the Court **OVERRULES** Defendants' objections
3  (ECF No. 46), **APPROVES** and **ADOPTS** the R&R in its entirety (ECF No. 41),
4  and **GRANTS IN PART** and **DENIES IN PART** Defendants' Motion for Summary
5  Judgment (ECF No. 32).  The Motion for Summary Judgment is **GRANTED** with
6  respect to C.O. Flores, who is dismissed from this case.  The Motion for Summary
7  Judgment is **DENIED** with respect to Drs. Casian and Walker.

8     **IT IS SO ORDERED.**

10  DATED:  March 7, 2016

Hon. Cynthia Bashant
United States District Judge